671 A.2d 974

**Jeffrey D. EBB**

v.

**STATE of Maryland.**

**No. 117, Sept. Term, 1994.**

Court of Appeals of Maryland.

Feb. 14, 1996.

Bell, J., dissented and filed an opinion in which Eldridge, J., joined.

580

Julia Doyle Bernhardt, Assistant Public Defender (Stephen H. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Ann N. Bosse, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

In this case we are asked to decide whether the trial court erred when it precluded cross-examination of the State's witnesses, in the jury's presence, about their pending criminal charges or charges of violation of probation. We shall hold that the trial judge did not abuse his discretion, and accordingly, we affirm.

Jeffrey Damon Ebb, the Petitioner, was tried and convicted in the Circuit Court for Montgomery County, for two counts of murder and related charges[1] arising out of an attempted robbery of Brodie's barbershop, which occurred on November 28, 1992. He was sentenced to life without parole on the murder convictions and concurrent sentences totaling 80 years imprisonment on the related charges. He appealed his conviction to the Court of Special Appeals, challenging, among other things, the trial judge's refusal to allow him to cross-examine, before the jury, two state's witnesses about their pending charges. In an unreported opinion, the intermediate appellate court affirmed. We granted Ebb's petition for writ of certiorari to determine whether the trial court properly limited the

---

1. Petitioner was indicted by the Grand Jury for Baltimore County for two counts of first degree murder, attempted first degree murder, four counts of assault, attempted armed robbery and related handgun offenses. The case was transferred to the Circuit Court for Montgomery County pursuant to Maryland Rule 4–254, after the State filed notice of its intention to seek the death penalty.

scope of the cross-examination of witnesses Todd Timmons and Lawrence Allen.

## I.

On November 28, 1992, James Brodie, the owner of Brodie's Barbershop, and Michael Peters, a customer at the shop, were shot and killed during an attempted robbery at the barbershop. At Ebb's trial, three of the witnesses called by the State, Todd Timmons, Lawrence Allen, and Jerome House–Bowman, each faced pending criminal or probation violation charges. Timmons had a pending violation of probation, based on a conviction for possession of controlled dangerous substances, and a motion for reconsideration of a sentence. Allen had pending theft and handgun violation charges in Baltimore County. House–Bowman had a pending violation of probation charge based on two armed robbery convictions.

Before trial, Ebb filed a motion requesting that the State disclose whether any witness had been offered any promise, reward or inducement in exchange for testimony. In response, the State proffered that no promises had been made to any witness, but that one witness, Jerome House–Bowman nonetheless believed that his testifying for the State might reflect favorably upon him. The prosecutor stated:

> I can tell you that we have not made any written promises of immunity or anything like that to any witness. The only one that I am aware of is the individual, Jerry House–Bowman believes that at some point he was told that somebody would speak on his behalf at a probation hearing that he has.
>
> I have talked with him about that, and I have explained to him that his testimony in this case is only based on the fact that it is the truth and it is the right thing to do. I talked with him about it and made clear to him that there is no express promise that that is going to happen.
>
> . . . . .
>
> But he believes that somebody told him that. So I am sure if he is asked, that is what he is going to say.

Notwithstanding the State's disclaimer, the Petitioner proposed to cross-examine Timmons, Allen, and House–Bowman about their pending charges. In that regard, the Petitioner contended that it is not what the State has promised, but rather the witnesses' motive to testify that is the proper subject of inquiry. Agreeing with the Petitioner, the court observed, "[i]t is not what the State has promised here. Sometimes the act itself is sufficient. In others, even without any promises, it is what is in the mind of the defendant." The court then ruled, "[f]irst of all, you have to lay some threshold that he does expect something." Pursuant to that ruling, hearings were conducted outside the presence of the jury to give the Petitioner the opportunity to "get [the] threshold foundation that would suggest that [the witness] expects any kind of lenience."

As the State predicted, House–Bowman acknowledged he had been told his testimony would not assist him in obtaining a favorable disposition of his pending probation matter. He still hoped, however, that testifying would help him to receive leniency. Allen and Timmons, on the other hand, not only confirmed the prosecutor's statement that no promises had been made to anyone, but they also denied expecting anything in return for their testimony.

In a hearing outside the presence of the jury, the examination of Timmons was as follows:

[Defense Counsel]: Has anyone made any promises to you in exchange for your testimony today?

MR. TIMMONS: No.

[Defense Counsel]: Have you discussed with [the State] any reward that you will receive in return for your testimony here today?

MR. TIMMONS: No.

[Defense Counsel]: Have you requested any?

MR. TIMMONS: No.

[Defense Counsel]: Has anyone expressed to you that under no circumstances could they make you any promises?

MR. TIMMONS: Yes.

[Defense Counsel]: Explain to me how that situation occurred?

MR. TIMMONS: The last time I came here—

[Defense Counsel]: The motions hearing in August?

MR. TIMMONS: Yes.

[Defense Counsel]: What happened?

MR. TIMMONS: [The State] let me know that there would be no promises made at all.

[Defense Counsel]: Did she tell you anything else?

MR. TIMMONS: No.

[Defense Counsel]: Did she tell you at any time that although she could not make you any promises that there was a possibility that something could happen down the road?

MR. TIMMONS: No.

[Defense Counsel]: Do you have any expectation, whether an express promise has been made or not, that you will receive some reward for your testimony here today?

MR. TIMMONS: No.

Defense counsel also questioned Lawrence Allen out of the jury's presence. The inquiry was as follows:

[Defense Counsel]: Do you expect to receive any assistance for your testimony here today?

[MR. ALLEN]: Not to my knowledge.

[Defense Counsel]: Have you sought assistance from the State's Attorney's Office?

[MR. ALLEN] No.

[Defense Counsel]: Do you expect that somehow your testimony here today will reflect favorably in your pending case in Baltimore County?

[MR. ALLEN]: Not to my knowledge.

[Defense Counsel]: Well, I am asking what you expect.

[MR. ALLEN]: No.

At the conclusion of the hearings, as to Timmons and Allen, the court ruled that because no promises of leniency had been made and the witnesses denied any expectation of leniency, the Petitioner could not inquire in the jury's presence about pending charges. A different conclusion was reached as to House–Bowman; because he stated that even though no promise of leniency had been made, he thought that his testifying for the State might reflect favorably upon him, and therefore, the court ruled that the Petitioner could pursue the matter before the jury.

■ The Petitioner was convicted and noted an appeal to the Court of Special Appeals. Before the intermediate appellate court, Ebb argued that Judge Cave erred in restricting the cross-examination of Timmons and Allen. Rejecting his claim, the intermediate appellate court stated,

We agree with the appellant that the pendency of criminal charges can be a source of possible bias. *Pettie v. State,* 316 Md. 509, 512–18 [560 A.2d 577] (1989); *Brown v. State,* 74 Md.App. 414, 415–22 [538 A.2d 317] (1988). As we explained in the *Brown* case, however, it is not even an explicit agreement between the State and a witness with respect to the witness's testimony that is the relevant factor. It is, rather, the case that, in order to show bias or motive to fabricate, the cross-examination must focus on the witness's state of mind. We observed, 74 Md.App. at 421 [538 A.2d 317]:

[T]he crux of the inquiry insofar as its relevance is concerned, is the witness's state of mind. What is essential to the preservation of the right to cross-examine is that the interrogator be permitted to probe into whether

the witness is acting under a hope or belief of leniency or reward.

*See also Fletcher v. State,* 50 Md.App. 349, 359 [437 A.2d 901] (1981). In dealing with the cross-examination of a witness in an effort to show bias or motive, the trial judge retains the discretion to impose reasonable limitations. *Smallwood v. State,* 320 Md. 300, 307 [577 A.2d 356] (1990).

The Court of Special Appeals affirmed the conviction, holding that "[i]n the balanced handling of this issue, we see no abuse of discretion on the part of Judge Cave." We agree and hold that the trial judge did not abuse his discretion in precluding the cross-examination of the witnesses about their pending charges.

## II.

The Petitioner argues that the trial court's ruling precluding cross-examination of Timmons and Allen, in the jury's presence, with regard to their pending charges was error. He maintains that, because it is the jury's responsibility to assess whether a witness is truthful, he has a constitutional right to cross-examine the witness in the jury's presence and that it is not necessary to first make a showing that the cross-examination will yield facts tending to discredit the witness' testimony. Essentially, he is arguing that whenever a witness for the State has a pending criminal charge, the defendant is entitled to inquire, before the jury, whether the witness has an expectation of leniency as a result of his testimony. He concludes, therefore, that notwithstanding a witness's denial of an expectation of leniency, whether the witness **in fact** hoped to gain favorable treatment was for the jury to determine.

The State contends that the trial judge did not abuse his discretion by precluding cross-examination about the witness' pending charges. Alternatively, the State contends that even if the trial judge erred in restricting Ebb's cross-examination, the error was harmless.

## III.

The Confrontation Clause of the Sixth Amendment and Article 21 of the Maryland Declaration of Rights guarantee a defendant in a criminal case the right to confront the witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *Simmons v. State*, 333 Md. 547, 555–56, 636 A.2d 463, 467, *cert. denied*, —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 26 (1994). This guarantee affords the defendant the right to cross-examine witnesses about matters relating to the witnesses' bias, interests, or motive to falsify. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). This right, however, is not unlimited. *See Smallwood v. State*, 320 Md. 300, 307, 577 A.2d 356, 359 (1990). We have recognized that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Smallwood*, 320 Md. at 307, 577 A.2d at 359 (quoting *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435).

Trial judges have considerable discretion in determining what evidence is relevant and material. *State v. Cox*, 298 Md. 173, 183–84, 468 A.2d 319, 324 (1983). The general rule is that the extent to which a witness may be cross-examined for the purpose of showing bias rests with the sound discretion of the trial judge. *Bruce v. State*, 328 Md. 594, 624, 616 A.2d 392, 407 (1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993); *Shields v. State*, 257 Md. 384, 392, 263 A.2d 565, 569 (1970); *Shupe v. State*, 238 Md. 307, 310, 208 A.2d 590, 592 (1965); *Fletcher v. State*, 50 Md.App. 349, 357, 437 A.2d 901, 906 (1981); *see also Kruszewski v. Holz*, 265 Md. 434, 440, 290 A.2d 534, 538 (1972). The cross-examiner must, however, be given wide latitude to establish bias or motive of a witness. *Bruce*, 328 Md. at 624, 616 A.2d at 407. Whether there has been an abuse of discretion necessarily requires consideration of the particular circum-

stances of each individual case; if the limitations placed upon cross-examination inhibit the ability of the defendant to receive a fair trial, the general rule vesting the court with discretion to disallow the inquiry does not apply. *Cox*, 298 Md. at 183–84, 468 A.2d at 324 (quoting *DeLilly v. State*, 11 Md.App. 676, 681, 276 A.2d 417 (1971)). The judge must balance the probative value of the proposed evidence against the potential for undue prejudice, keeping in mind the possibility of embarrassment to or harassment of the witness and the possibility of undue delay or confusion of the issues.

As a general rule, pending criminal charges are not admissible to impeach a witness. An exception to that rule, however, is when the pending charges are offered to show bias, prejudice or motive of the witness in testifying. In determining whether to admit the evidence, the judge must engage in a balancing test giving wide latitude to cross-examine for bias or prejudice but not permitting the questioning "to stray into collateral matters which would obscure the trial issues and lead to the factfinder's confusion." *Smallwood*, 320 Md. at 308, 577 A.2d at 359 (citing *Cox*, 298 Md. at 178, 468 A.2d at 321). The trial judge is in the best position to balance the probative value of the unrelated pending charges against the prejudicial effect and to decide when their admission would enmesh the trial in confusing or collateral issues.

In *Watkins v. State*, 328 Md. 95, 613 A.2d 379 (1992), we were asked to consider whether a defendant may cross-examine a State's witness about potential interest or bias in favor of the State under two circumstances—when that evidence pertains to the witness' probationary status and when that evidence pertains to a pending criminal charge in an unrelated cause. The defendant in *Watkins* was charged with shooting several people with the intent to disable them. He appealed the trial court's restriction of his cross-examination of several of the State's witnesses. He attempted to show that two of the State's witnesses were on probation, and that their probationary status colored their testimony. Specifically, he wished to show "that it was their connection with the

criminal justice system, *i.e.*, the pending charges or probation status, and the risks of revocation or unfavorable treatment, that accounted for their lack of candor regarding the cause of the shootings." *Watkins*, 328 Md. at 118, 613 A.2d at 390 (Bell, J., dissenting). We found no basis for appeal of the trial court's ruling excluding the evidence concerning the pending theft charge because defense counsel acquiesced in the court's ruling and the issue was not preserved for appeal. As to the probationary status, we held that the decision to permit cross-examination about a witness' probationary status rests within the sound discretion of the trial judge. *Id.* at 103, 613 A.2d at 382–83.

Watkins argued that *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), "compels the admission of evidence that any State's witness is on probation for any crime, if that evidence is offered by the defendant." *Watkins*, 328 Md. at 100, 613 A.2d at 381. We rejected such a broad reading of *Davis*, suggesting instead that the holding of *Davis* was narrower.[2] We recognized that the witness against Davis might have been motivated to testify favorably for the State because he was potentially a suspect in the crime for which Davis was charged. Watkins did not suggest that the State's witnesses had committed any offense for which the defendant was charged. Thus, while we recognized that there was some merit in Watkins' contention that the proposed testimony went to bias, we held that the trial judge, after weighing the potential relevance of this information against the potential misuse of the evidence, did not abuse his discretion in exclud-

---

2. Writing for the Court, Judge McAuliffe observed that "[t]he facts of *Davis*, and other language in the Court's opinion, suggest, however, that the holding of that case was narrower" than Watkins suggested. *Watkins v. State*, 328 Md. 95, 100, 613 A.2d 379, 381 (1992). Quoting from *Davis*, we noted

Since defense counsel was prohibited from making inquiry as to the witness' being on probation under a juvenile court adjudication, Green's protestations of unconcern over possible police suspicion that he might have had a part in the Polar Bar burglary and his categorical denial of ever having been the subject of any similar law enforcement interrogation went unchallenged.

*Id.* at 101–02, 613 A.2d at 382.

ing the testimony. In this regard, we also noted "had the trial judge exercised his discretion to allow the evidence, that would not have constituted error."[3] *Id.* at 103, 613 A.2d at 382.

■ The State reads *Watkins* to stand for the proposition that "where the subject of the proposed inquiry is of limited probative value and could brand the witness with prior bad acts not otherwise admissible as bearing on credibility, a trial court's decision not to permit cross-examination on the subject will not be deemed an abuse of discretion." *See also* J. Murphy, Jr., *Maryland Evidence Handbook*, § 1302(E)(1)(c) at 667 (2d ed. 1993) (*Watkins* held that "the trial judge has discretion to permit or prohibit questions about probation and/or pending charges"). We agree with the State.

In the instant case, the trial judge conducted a hearing outside the presence of the jury, allowing Ebb to question the witnesses extensively. On voir dire, Timmons and Allen testified that the State had not offered and that they did not expect leniency in exchange for their testimony. They denied any expectation of leniency in return for their testimony and there was no basis for any expectation of leniency. The trial judge ruled Ebb's proposed cross-examination inadmissible. On the other hand, the judge allowed Ebb to cross-examine House–Bowman about his pending charges because he had some subjective expectation of leniency.

Applying the principles of *Watkins* to the instant case, we conclude that the trial judge did not abuse his discretion in precluding the Petitioner from cross-examining the witnesses about their pending charges before the jury. *See Gutierrez v. State*, 681 S.W.2d 698, 705–07 (Tex.Ct.App.1984) (holding that a trial judge has discretion to exclude evidence of pending charges, and that where the defendant was given a full opportunity outside the presence of the jury to develop a foundation for bias but failed to do so, the trial judge did not

---

3. Likewise, in this case, it would not have constituted an abuse of discretion if the judge had allowed the evidence.

abuse its discretion); *State v. Grace*, 643 So.2d 1306, 1307–09 (La.Ct.App.1994). In fact, Judge Cave did what we suggested in *Smallwood* and *Watkins*. He held a hearing outside the presence of the jury, engaged in a balancing process and determined that the evidence had little or no probative value. *See Grace*, 643 So.2d at 1308 (holding trial court properly conducted hearing outside jury's presence to determine admissibility of the evidence and the existence of a deal). In determining the admissibility of the evidence, the trial judge considered the testimony of the witnesses, i.e., that they were not offered and did not expect leniency. He made a preliminary finding that based on the denial of the witnesses and the uncontroverted representation of the prosecutor that there was no offer of leniency, there was a complete lack of probative value or that the value for impeachment was so slight as to be overcome by the probability that the testimony would be unduly prejudicial or confusing to the jury. This we believe, is a proper matter for the trial court's discretion.

Under the circumstances of this case, and particularly because the witnesses testified unequivocally that they expected no benefit from their testimony, and there was no basis to infer an expectation of any benefit, we hold that the trial judge did not abuse his discretion in excluding the evidence and in finding that the fact that charges were pending had little or no probative force.

*JUDGEMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

BELL, Judge, dissenting, in which ELDRIDGE, J., joins.

This case requires resolution of a frequently occurring conflict between a trial court's duty to control trial, including the cross-examination of witnesses, and a jury's responsibility to judge the credibility of witnesses. The Court of Special Appeals, in an unreported opinion, resolved the conflict in favor of the State. Relying on the court's right to control the cross-examination of witnesses, the Court of Special Appeals held that the trial court did not abuse its discretion when,

after conducting hearings outside the presence of the jury, it excluded evidence of the witnesses' pending charges and/or probationary status, based on its having found that the witnesses had no expectation of favorable treatment because of testifying. The majority affirms the judgment of the Court of Special Appeals. Because I am of the opinion that the province of the jury as the judge of witness credibility was impermissibly invaded, I respectfully dissent.

## I.

Jeffrey Damon Ebb, the petitioner, was tried in the Circuit Court for Montgomery County for murder and related charges, in connection with an attempted robbery of a barbershop, which occurred on November 28, 1992. To prove the petitioner's criminal agency, the State called, in addition to the petitioner's alleged accomplice, Stephanie Stevenson, three witnesses: Todd Timmons, Lawrence Allen, and Jerome House–Bowman. Timmons and Allen placed the murder weapon in the petitioner's possession at about the time the murders were committed.

According to Timmons, he purchased a nine millimeter handgun from the petitioner around the end of November 1992.[1] When Timmons was arrested, *inter alia,* for possession of the handgun, it was discovered that it was the weapon used to kill two persons in the barbershop. Allen, in addition to testifying that the petitioner had a gun that looked like the murder weapon in his possession prior to the murders, testified that, on November 28, 1992, the petitioner asked him for money with which to get out of town. House–Bowman stated that, in December 1992, the petitioner admitted his involvement in the "barbershop murder" to him, explaining that he

---

1. Timmons originally testified that he purchased a nine millimeter handgun from the petitioner in either September or October 1992, being unsure of the exact month. Upon further questioning, he amended his testimony to reflect that he purchased the gun in November 1992.

knew where the money was kept and that was why he attempted to rob the barbershop.

Timmons, Allen and House–Bowman all had charges pending against them and were incarcerated at the time they testified. Timmons was serving a two-year, six-month sentence for possession of a controlled dangerous substance with intent to distribute,[2] as to which there was a pending motion for reconsideration. He was also awaiting trial on a violation of probation charge, for which he was "backing up" a one year sentence. Along with serving a six-month sentence for possession of narcotics, Allen had pending handgun violation and handgun theft charges. House–Bowman was awaiting trial on a violation of probation charge, the underlying charges being two robberies with a deadly weapon.

Prior to trial, the petitioner inquired "whether or not any statements or promises or inducements had been made to the State's witness." In response, the prosecutor informed the court:

Judge, I can tell you that we have not made any written promises of immunity or anything like that to any witness. The only one that I am aware of is the individual, Jerry Bowman–House believes that at some point he was told that somebody would speak on his behalf at a probation hearing that he has.

I have talked with him about that, and I have explained to him that his testimony in this case is only based on the fact that it is the truth and it is the right thing to do. I talked with him about it and made clear to him that there is no express promise that that is going to happen.

\* \* \* \* \* \*

But he believes that somebody told him that. So I am sure if he is asked, that is what he is going to say.

Despite the State's position that it had made no promises, the petitioner, nevertheless, sought to cross-examine Tim-

---

**2.** The record does not reflect what substance Timmons possessed with intent to distribute.

mons, Allen, and House–Bowman about their pending charges. To support his position, the petitioner contended that it was not what the State had promised, but rather the witnesses' motive to testify that was a proper subject of inquiry. The court agreed with the petitioner stating, "it is not what the State has promised here. Sometimes the act itself is sufficient. In others, even without any promises, it is what is in the mind of the defendant." Consequently, the court ruled that "[f]irst of all, you have to lay some threshold foundation that he does expect something." Based on that ruling, the court held hearings outside the presence of the jury, thus allowing the petitioner the opportunity to "get [the] threshold foundation that would suggest that [the witness] expects any kind of lenience."

When confronted at a hearing outside the presence of the jury, House–Bowman stated that he had been told his testimony would not assist him in obtaining a favorable outcome in his pending probation matter. Nevertheless, he acknowledged that he still hoped that testifying would help him to receive leniency. In contrast, Timmons and Allen, when questioned outside the presence of the jury, confirmed that the prosecutor made no promise to them and also denied expecting anything in return for their testimony.

As to Timmons and Allen, the court ruled that, while their convictions affecting credibility could be inquired into, the petitioner could not cross-examine these witnesses concerning pending charges. A different conclusion was reached as to House–Bowman, however. Because he admitted expecting favorable consideration, the court permitted the petitioner to cross-examine him as to the pending violation of probation charge. During the cross-examinations of Timmons and Allen, the petitioner did, in fact, bring out their prior relevant criminal convictions.

Having been convicted of two counts of felony murder, attempted second degree murder, attempted robbery with a deadly weapon, use of a handgun in the commission of a felony, use of a handgun in the commission of a crime of

violence, and three counts of assault, for which he received a total sentence of life imprisonment without parole,[3] the petitioner noted an appeal to the Court of Special Appeals. Among the challenges he raised was the trial court's restriction of his cross-examination of Timmons and Allen. The Court of Special Appeals affirmed the judgments, holding that "[i]n the balanced handling of this issue, we see no abuse of discretion on the part of [the trial court]." This Court, at the petitioner's request, granted certiorari to consider the important issue involved.

## II.

The petitioner contends that the trial court's preclusion of his cross-examination of Timmons and Allen about their pending charges in the presence of the jury was error. He argues that, because it is the jury's responsibility to assess whether a witness is being truthful, cross-examining the witnesses in the jury's presence as to pending charges is permissible, without regard to what the witnesses might say. The petitioner relies, therefore, on the credibility judging function of the jury and the right of confrontation guaranteed him by the Sixth and Fourteenth Amendments to the United States Constitution and Article 21 of the Maryland Declaration of Rights. The confrontation right includes the right to cross-examine witnesses on matters affecting bias, interest, or motive to falsify. *Brown v. State*, 74 Md.App. 414, 418, 538 A.2d 317, 319 (1988); *see also Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

While recognizing a defendant's constitutional right of confrontation, and more particularly to cross-examine witnesses, the State characterizes the issue in this case in terms of the trial court's discretion to control the cross-examination of witnesses. In its view, the real question is whether, in this case, the line the court drew in limiting the petitioner's cross-examination was an abuse of discretion. The State thus relies

---

3. In addition to the life sentences, the court sentenced the petitioner to concurrent life sentences totaling 80 years imprisonment.

on the fact that our cases recognize that the right to cross-examine is not limitless. Noting that this Court has held that trial courts have "discretion to determine whether particular evidence is relevant to the issue of bias or motive," *Bruce v. State,* 328 Md. 594, 624, 616 A.2d 392, 407 (1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993), and that the broad latitude given a defendant to cross-examine as to bias or prejudice must be balanced against the need to prevent cross-examination from straying into collateral matters, obscuring trial issues and confusing the fact finder, the majority, adopting the State's argument, contends that the trial court properly exercised its discretion in this case. It relies on *Watkins v. State,* 328 Md. 95, 613 A.2d 379 (1992), which acknowledges, if not explicitly then implicitly, the tension that may exist between the judge's trial control function and the jury's credibility judging function.[4] 341 Md. 578, 587–590, 671 A.2d 974, 978–980 (1996).

In this State, in a jury trial, it is well settled that it is the function of the jury, rather than the trial judge, to judge the credibility of the witnesses, to weigh their testimony, and to resolve contested facts. *Bohnert v. State,* 312 Md. 266, 278–79, 539 A.2d 657, 663 (1988); *Gore v. State,* 309 Md. 203, 210, 214, 522 A.2d 1338, 1341, 1343 (1987); *Wilson v. State,* 261 Md. 551, 566, 276 A.2d 214, 221 (1971); *Jacobs v. State,* 238 Md. 648, 650, 210 A.2d 722, 723 (1965). *See also Dykes v. State,*

---

**4.** The State also relies on *Johnson v. State,* 332 Md. 456, 467, 632 A.2d 152, 157 (1993). That reliance is tied to *Watkins v. State,* 328 Md. 95, 102–03, 613 A.2d 379, 382–83 (1992). It cites *Johnson* for the proposition that:

"[F]or purposes of cross-examination of a prosecution witness *in order to show bias or motive,*

'[T]he crux of the inquiry insofar as its relevance is concerned, is the witness' state of mind. What is essential to the preservation of the right to cross-examine is that the interrogator be permitted to probe into whether the witness is acting under a hope or belief of leniency or reward,'

or out of spite or vindictiveness. (Emphasis in original). *Smallwood,* 320 Md. at 309–10, 577 A.2d at 360, quoting with approval, *Brown v. State,* 74 Md.App. 414, 420–21, 538 A.2d 317, 320 (1988), quoting *Fletcher v. State,* 50 Md.App. 349, 359, 437 A.2d 901, 906 (1981)."

319 Md. 206, 224, 571 A.2d 1251, 1260 (1990).  Moreover, this Court has long made clear that a jury's resolution of credibility is entitled to great deference.  *See e.g., Dykes,* 319 Md. at 222, 224, 571 A.2d at 1259–60; *Bohnert,* 312 Md. at 278–79, 539 A.2d at 663; *Gore,* 309 Md. at 210, 214, 522 A.2d at 1341, 1343; *Branch v. State,* 305 Md. 177, 184, 502 A.2d 496, 499 (1986); *Dempsey v. State,* 277 Md. 134, 150, 355 A.2d 455, 463 (1976).

*Dykes* is illustrative.  There, the defendant offered a defense of perfect self-defense and imperfect self-defense.  The trial court refused to instruct on either defense, finding the evidence presented by the defendant unpersuasive.  This Court reversed.  Although finding the defenses to be "difficult to accept," we held that the trial court had erred in making a preliminary determination on credibility.  We explained:

> In short, the judge resolved conflicts in the evidence, choosing which parts of Dykes's statement and testimony to believe, weighed the evidence and made findings of fact.  On this culling of the evidence, he found that the elements necessary to establish perfect self-defense had not been established and that the incidents of imperfect self-defense had not been met.  This went far beyond his authority.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> *Of course, what evidence to believe, what weight to be given it, and what facts flow from that evidence are for the jury, not the judge, to determine.*  When the trial judge resolves conflicts in the evidence in the face of the "some" evidence requirement, and refuses to instruct because he believes that the evidence supporting the request is incredible or too weak or overwhelmed by other evidence, *he improperly assumes the jury's role as fact-finder.*

*Dykes,* 319 Md. at 222, 224, 571 A.2d at 1259–60 (citations omitted) (emphasis added).

The jury performs its credibility judging function more effectively when all relevant, salient facts concerning witnesses are placed before it.  Accordingly, ensuring that the relevant, salient facts are before the jury is the function of

cross-examination. *See State v. Cox*, 298 Md. 173, 183–84, 468 A.2d 319, 324 (1983) ("That a witness may be cross examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge or the like, is a fundamental concept in our system of jurisprudence.") (quoting *DeLilly v. State*, 11 Md.App. 676, 681, 276 A.2d 417, 419 (1971)). Whether a witness is biased, has an interest in the outcome of the litigation, or has a motive to lie are matters that properly inform the decision as to credibility. *See* 3A J. Wigmore, Evidence § 940 (Chadbourn rev. 1970) (stating that whether a witness is biased is "always relevant as discrediting the witness and affecting the weight of his testimony." Hence, it is always subject to exploration at trial). *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624, 628 (1931) (stating that a defendant has a right to "place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.").

Cross-examination then is "the principal means by which the believability of a witness and the truth of his [or her] testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). Its goal is not only "to delve into the witness' story to test the witness' perceptions and memory, but . . . to impeach, *i.e.*, discredit the witness." *Id.* In addition to inquiring into a witness's prior convictions, "[a] more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 354. A criminal defendant thus states a violation of the Confrontation Clause by showing that he was prevented from pursuing otherwise appropriate cross-examination in an effort to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684

(1986) (quoting *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355).

When a defendant's confrontation rights are abridged, the jury, concomitantly, is denied the benefit of information on the basis of which to perform its credibility judging function. *See Davis,* 415 U.S. at 317, 94 S.Ct. at 1111, 39 L.Ed.2d at 354 (quoting *Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934, 937 (1965)) ("Jurors [are] entitled to have the benefit of the defense theory before them so that they [can] make an informed judgment as to the weight to place on [the witnesses'] testimony which provide[s] 'a crucial link in the proof . . . of the petitioner's act.' ").

To be sure, cross-examination for bias is not without restriction, as the majority recognizes. 341 Md. at 587, 671 A.2d at 978. Indeed, this Court has considered as well settled the proposition that " 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " *Smallwood v. State,* 320 Md. 300, 307, 577 A.2d 356, 359 (1990) (quoting *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683). This restriction is aimed at avoiding "collateral matters which will obscure the [trial] issue[s] and lead to the fact finder's confusion." *Cox,* 298 Md. at 178, 468 A.2d at 321. It does not apply, however, unless and until, the cross-examiner has reached the " 'constitutionally required threshold level of inquiry.' " *Smallwood,* 320 Md. at 307, 577 A.2d at 359 (quoting *Brown v. State,* 74 Md.App. 414, 419, 538 A.2d 317, 319 (1988)).

The majority holds that cross-examination was properly restricted in this case. It reads *Watkins v. State,* 328 Md. 95, 613 A.2d 379 (1992), as standing for the proposition that "where the subject of the proposed inquiry is of limited probative value and could brand the witness with prior bad acts not otherwise admissible as bearing on credibility, a trial court's decision not to permit cross-examination on the subject

matter will not be deemed an abuse of discretion." [5]  341 Md. at 590, 671 A.2d at 980.

In *Watkins*, two of the State's witnesses were on probation. Both witnesses denied the defendant's contention that the indictment out of which the defendant's charges arose was drug related. The defendant sought to cross-examine those witnesses as to their probationary status, arguing that it gave them a second reason for denying drug involvement, the first being the understandable desire to avoid the risk of prosecution which such an admission would entail. Although the majority noted that the petitioner's argument had "some merit," 328 Md. at 102, 613 A.2d at 382, it held that the trial court did not abuse its discretion when it disallowed the inquiry. The majority added, however, that "had the trial judge exercised his discretion to allow the evidence, that would not have constituted error." *Id.* at 102–03, 613 A.2d at 382.

Even if one were to accept the majority's reading of *Watkins*, which I do not, as my dissent in that case confirms, it does not alter what the result in this case should be. Timmons and Allen were serving sentences in addition to awaiting trial on other charges. In the case of Timmons, a motion for reconsideration of his sentence was also pending. Moreover, Timmons and Allen were important State's witnesses in a murder case, not, as in *Watkins*, essentially complaining witnesses against the party who assaulted them.

As I stated in my *Watkins* dissent, the crux of the relevant inquiry as to bias, motivation, interest and the like, is the witness' state of mind. *Id.* at 118, 613 A.2d at 390 (Bell, J., dissenting); *see also Smallwood*, 320 Md. at 309, 577 A.2d at 360. Therefore, just as the *Watkins* "jurors would understand that any witness would be reluctant to admit to illegal drug

---

5. The issue this case presents, however, was never directly raised or argued in *Watkins*. In fact, there the majority held that "[d]efense counsel clearly accepted the prosecutor's statement that no 'deal' had been made with the witness, and acquiesced in the court's ruling." 328 Md. at 100, 613 A.2d at 381.

involvement because of the danger of being prosecuted for such involvement," 328 Md. at 103, 613 A.2d at 382, the jurors in the instant case would understand that witnesses currently serving a sentence and saddled with pending charges would be willing to testify to clear a murder case without an explicit agreement for leniency, in hopes of later favorable treatment. The relevant inquiry, and the one sought to be made in this case, relates to what the jury clearly would understand, and so it is equivalent to the refusal to acknowledge drug involvement in *Watkins.* Without question, then, such evidence must be placed before the jury to allow it to make accurate credibility assessments as to the witnesses' testimony, and consequently, the weight it should be accorded.[6]

Not surprisingly, I find myself in fundamental disagreement with the majority in this case, as I was with the *Watkins* majority, as to the probative value of evidence concerning the witnesses' pending charges and/or probationary status and the importance of placing that information before the trier of fact. In the instant case, the probative value of the petitioner's inquiries of the witnesses is considerably more substantial than its potential misuse to brand "the witnesses with prior bad acts not otherwise admissible as bearing on credibility. . . ." *Watkins,* 328 Md. at 103, 613 A.2d at 382. Furthermore, there is "no indication that defense counsel was harassing the witness by asking an unfounded question or seeking primarily to embarrass the witness." *Smallwood,* 320 Md. at 310, 577 A.2d at 360–61 (quoting *Cox,* 298 Md. at 184, 468 A.2d at 324). In addition, the subject of the inquiry here is a matter that goes to the " 'very heart' " of the witnesses' bias. *Id.* There simply was no danger of the jury's attention being diverted, confounded or confused in this case.

Besides *Watkins,* the other cases the majority relies upon as support for its position are, *State v. Grace,* 643 So.2d 1306

---

**6.** Because the state of mind of a witness is often a matter of inference, quite logically then, it need not be, and indeed may be unable to be established by direct proof. But that is precisely what the trial court erroneously required.

(La.Ct.App.1994) and *Gutierrez v. State,* 681 S.W.2d 698 (Tex. Ct.App.1984). *Gutierrez,* however, does not suggest that the cases from Texas on which the petitioner relies are no longer good law; rather, it sought to distinguish them on the basis that, in those cases, the testifying witness was an indictee or suspect in the principal crime for which the defendant was on trial. This fact, the court suggested, gave rise to an obvious incentive for the witness to testify against the defendant to protect his own self-interest.[7] In short, while *Gutierrez* and *Grace* resolve the conflict between the trial role of the jury and judge in favor of the trial judge's discretion to limit cross-examination, they are not persuasive authority for resolution of the case at bar.

The petitioner does not claim that the State promised Timmons and Allen anything. For this reason, the petitioner has never challenged the accuracy of the State's representation that it made no promises. The petitioner's position, rather, is that whether or not Timmons and Allen *subjectively* expected to obtain some benefit for their testimony, the jury *conceivably* could have so found. The jury was not, therefore, obliged to accept the witnesses' disclaimer. Accordingly, cognizant that the jury, as the trier of fact, is charged with responsibility for resolving credibility issues, the petitioner sought to cross-examine the witnesses as to their bias, interest, motivation, or the like, all of which are proper subjects of cross-examination. As discussed *supra,* the focus of the petitioner's inquiry was for the purpose of putting before the jury information on the basis of which it could infer that the witnesses' testimony lacked credibility and, thus, should be discounted.

In this case, the trial court's ruling prevented the jury from ever considering whether the witnesses were biased or otherwise interested in the case. The court did so by determining

---

7. A similar rationalization was offered in *State v. Lindh,* 161 Wis.2d 324, 468 N.W.2d 168, 178 (1991), a case upon which the State relied. While such circumstances constitute a distinction, they do not form a sufficient basis for limiting the jury's trial role.

that the petitioner did not lay a proper foundation to entitle him to cross-examine the witnesses. This result, in turn, was reached in two ways. First, the court made a credibility determination, assessing whether witnesses testified truthfully when they denied expecting a reward or favorable treatment in connection with their pending charges for their testimony. Second, the court placed on the petitioner the impossible burden of proving by direct evidence from the witnesses themselves, the witnesses' state of mind. On both counts, the trial court erred. Certainly, there is no legal requirement that a witness' state of mind be proven by direct evidence. And, as discussed *supra*, credibility issues in a jury trial are matters reserved for resolution by the jury. Moreover, the trial court's right to limit cross-examination does not extend to the point of preventing cross-examination altogether in an area that is a traditional focus of cross-examination.

Resolving the conflict between the trial court and the jury in favor of permitting cross-examination so that the jury has an opportunity to pass on the credibility of witnesses is consistent with the result reached by the courts that have considered this issue. *See Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435, 89 L.Ed.2d at 676; *People v. Richmond*, 84 Ill.App.3d 1017, 40 Ill.Dec. 434, 435–36, 406 N.E.2d 135, 136–37 (1980); *Williams v. Commonwealth*, 569 S.W.2d 139, 144–45 (Ky.1978); *Spears v. Commonwealth*, 558 S.W.2d 641, 642 (Ky.Ct.App.1977); *Commonwealth v. Hogan*, 379 Mass. 190, 396 N.E.2d 978, 979 (1979) ("where [criminal] charges are pending, there is possibility of bias in favor of the government, and normally it is for the jury, and not the judge, to determine the effect, if any, of those pending charges on the witness's testimony."); *State v. Baker*, 133 N.J.Super. 398, 336 A.2d 762, 764 (1975); *People v. Leonard*, 58 A.D.2d 1018, 396 N.Y.S.2d 956, 957 (1977) (even though trial court found that there was no "deal," it was error to preclude defense from cross-examining State's witness about the same); *State v. Spicer*, 285 N.C. 274, 204 S.E.2d 641, 647 (1974); *State v. Roberson*, 215 N.C. 784, 3 S.E.2d 277, 280 (1939); *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626, 631–32 (1986); *Koehler v. State*, 679

S.W.2d 6, 9–10 (Tex.Crim.App.1984) (en banc); *Parker v. State*, 657 S.W.2d 137, 140–41 (Tex.Crim.App.1983) (en banc); *Spain v. State*, 585 S.W.2d 705, 710 (Tex.Crim.App.1979).

The State quite properly points out that the petitioner was able to attack the witness's credibility generally, with evidence of prior convictions affecting credibility. It argues, therefore, that the error was harmless. I do not agree. Evidence of a more particular reason for challenging the credibility of a witness is more effective than a general attack on credibility. Indeed, a particularized attack on credibility permits a more effective argument to be made as to "why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355 (emphasis in original). In order to find an error harmless, a reviewing court, "upon its own independent review of the record [must be able] to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict. . . ." *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976). Therefore, being precluded from pursuing the bias inquiry certainly could have influenced the verdict and, consequently, is not harmless beyond a reasonable doubt.

## IV.

In sum, because this petitioner, like the petitioner in *Watkins*, was not permitted to cross-examine witnesses concerning their pending charges and/or probationary status, he has been denied his constitutionally required threshold level of inquiry. More importantly, until that threshold is satisfied, the trial court abuses its discretion by engaging in the kind of balancing process advanced by *Watkins*, and reaffirmed by the majority today.[8] *See* 341 Md. at 590, 671 A.2d at 980. Be-

---

8. I believe that the majority's reliance on *Smallwood* as support for the position it has adopted in this case is misplaced. *See* 341 Md. 578, 587–590, 671 A.2d 974, 978, 980 (1996). In this case, there is no harassment, prejudice, or confusion of the issues. Moreover, there is nothing "repetitive" or "marginally relevant" about the bias inquiry the

cause the majority fails to grasp this fundamental concept, I must dissent.

ELDRIDGE, J. joins in the views herein expressed.

---

petitioner attempted to make. *Smallwood,* 320 Md. at 307, 577 A.2d at 359 (quoting *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683).