647 A.2d 1240

**Charles Curtis HIMPLE**

v.

**STATE of Maryland.**

**No. 1911, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Sept. 28, 1994.

James Wyda, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before BISHOP, ALPERT and CATHELL, JJ.

CATHELL, Judge.

Charles Curtis Himple, appellant, was convicted by a jury in the Circuit Court for Baltimore City of assault, possession of a handgun, possession of a handgun by a convicted felon, and resisting arrest. He was sentenced to ten years on the assault charge; two years, consecutive to the assault sentence, for possession of a handgun; two years, consecutive to the prior handgun sentence, for possession of a handgun by a convicted felon; and three years, consecutive to the prior handgun sentence, for resisting arrest. The sentences totaled seventeen years.

He presents three questions for our review:

1. Did the trial court err in instructing the jury regarding the reasonable doubt standard?

2. Did the trial court err in failing to merge Appellant's convictions for assault and resisting arrest?

3. Did the trial court err in failing to merge Appellant's convictions for possession of a handgun and possession of a handgun by a convicted felon?

## Facts

Officer Jeffries, while patrolling in a marked police car, noticed, as appellant attempted to zip up his jacket, that appellant had a handgun in his waistband. As the officer exited the vehicle, appellant reached into his waistband and began to remove the weapon.

The officer grabbed for the weapon and struggled with appellant. Appellant abandoned the gun, fled with the officer in pursuit, and was tackled after a chase of about a block. At that point, appellant punched and kicked the officer, injuring him.

The charging document upon which appellant was tried included:

2. ... did assault P/O Kenneth D. Jeffries by pointing a 9 mm STAT: interarm handgun....

3.   ... did resist the lawful arrest and apprehension by P/O Kenneth D. Jeffries....

## 1.

### Did the trial court err in instructing the jury regarding the reasonable doubt standard?

■   We answer the question affirmatively and we shall reverse.  We explain.

The instruction given was as follows:

The burden of proving the defendant guilty is upon the prosecution from the beginning to the end of the trail [sic]. The defendant has no burden to sustain, does not have to prove his innocence.

. . . .

The charges against the defendant are not evidence of guilt, they are merely a complaint to let the Jury and the defense know what the charges are.  The test of reasonable doubt is the evidence that the State has produced must be so convincing that it would enable you to act on an important piece of business in your everyday life.  The words, to a moral certainty, do not mean absolute or mathematical certainty, *but a certainty based upon a convincing ground of probability.*

That instruction does not contain the "without reservation" language the Court of Appeals deemed acceptable, though not absolutely required, in *Wills v. State,* 329 Md. 370, 382–84, 620 A.2d 295 (1993).  More important, the trial court's additional instruction as to "convincing ground of probability" is in conflict with any reasonable doubt standard.  However, appellant did not object below.  In order to reverse, therefore, we must find "plain error" in the instructions, "material to the rights of the defendant."  (Md.Rule 4–325(e)).

First, we note what we said in *Austin v. State,* 90 Md.App. 254, 257–58, 600 A.2d 1142 (1992):

The number of occasions on which we are asked to invoke the "plain error" exemption from the otherwise foreclosing

effect of non-preservation through failure to object remains so epidemic that it behooves us periodically, as forcefully as we know how, to do what we can to limit the contagion. Maryland Rule 4–325(e) states the basic and simple principle with unmistakable clarity:

"No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection."

That is the norm. That is the clearly articulated standard that must be satisfied as a precondition for appellate review. It is the norm to which we have always adhered and to which we shall continue to adhere. The rule does go on to state a very limited exception, whereby an appellate court *may* (though it need not and usually will not) choose to overlook, in unusual circumstances, the procedural dereliction:

"An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object."

In *Wills,* 329 Md. at 376, 620 A.2d 295, the Court of Appeals noted, "Therefore, 'a trial judge ... must give an instruction correctly explaining "reasonable doubt" if requested by the accused.'" In *Williams v. State,* 322 Md. 35, 585 A.2d 209 (1991), the Court stated, citing *Lansdowne v. State,* 287 Md. 232, 412 A.2d 88 (1980), "[T]he requirement that the prosecution prove guilt beyond a reasonable doubt is constitutionally mandated," *id.* at 42, 585 A.2d 209, and later opined "[W]e have warned that 'failure to instruct ... on the necessity of proof of guilt beyond a reasonable doubt can never be harmless error.'" In the case *sub judice,* a reasonable doubt instruction was given but it was erroneous in its equation of a convincing ground of probability to reasonable doubt. In other words, the jurors were instructed that if they were convinced that it was probable that appellant committed the offense, they could convict him of the charges. That is not the

standard, and it is the type of error we will consider even in the absence of preservation. It is "plain error." It is also clearly prejudicial.

Even if the "probability" factor had not been included, the balance of the instruction given above appears to equate the degree with which people make important decisions in their everyday life with the reasonable doubt standard. That is not an accurate comparison. The important language in that portion of the pattern instruction that makes it a proper comparison is the language "willing to act ... *without reservation.*" The legal reasonable doubt standard and the decision making process in respect to important personal matters in a layman's life are not the same. *See Wills, supra,* and *Joyner–Pitts v. State,* 101 Md.App. 429, 647 A.2d 116 (1993). It is the language "without reservation" that tends to impart to the jury the degree of certainty that elevates the comparison in the direction of the reasonable doubt standard.

The instruction in the case at bar also failed to include any "without reservation" language. We have stated that that failure by itself would not necessarily constitute "plain error." Many of the cases cited in the discussion in *Wills* concerned the misuse or nonuse of the words "without hesitation" or "without reservation" in the giving of a reasonable doubt instruction. The *Wills* Court, after opining that "[o]ur opinions reflect an appreciation that the reasonable doubt standard is difficult to explain," *id.* 329 Md. at 282, 620 A.2d 295, went on to "extract" certain guidelines for trial courts. It noted that the instruction should not "tend to confuse, mislead or prejudice the accused"; that it should begin with a statement of the principal of presumption of innocence; that the State is not required to prove guilt to a mathematical certainty, "but it is not enough if the evidence shows that the defendant is *probably* guilty." 329 Md. at 282–83, 620 A.2d 295.

The Court then went on to discuss the use of the phrase "without hesitation" in the instruction, first acknowledging that for over half a century it had found no error in the use of such language. But it noted that the committee that had

formulated the Maryland Pattern Jury Instructions–Criminal 1991 (MPJI–CR) had replaced the "without hesitation" language with the phrase "without reservation" because, according to the committee, the change

> replaces the traditional "without hesitation" phrase with the phrase "without reservation" so that the jury will not confuse the degree of certainty needed with an immediacy of acting upon that certainty.

*Wills*, at 384, 620 A.2d 295. The Court went on to accept the change, opining that justice was better served by the "without reservation" language and concluded that the "without hesitation" language may not be "erroneous per se. We are of the strong belief, however, that 'without reservation,' as the pattern instruction suggests, is the better term." *Id.* at 384, 620 A.2d 295. It later, in addressing the trial court's use of comparisons in explaining reasonable doubt to the jury, noted that the trial court had given an instruction that was "confusing and misleading because it leans toward the preponderance standard rather than the reasonable doubt standard." *Id.* at 387, 620 A.2d 295.

Judge McAuliffe's concurrence in *Wills* contains his reservations in respect to any departure from the pattern instruction.

> I join in the Court's opinion. I write separately to express my strongly held view that trial judge's should instruct on the issue of reasonable doubt in the form suggested by Maryland Criminal Pattern Jury Instruction 2:02, and resist the temptation to stray from, or embellish upon, that instruction.

*Id.* at 388–89, 620 A.2d 295.

We agree. Those of us who have served on the trial courts are well aware of the temptation to embellish upon the instruction. Many trial judges, including some who are now on this Court, and many members of the Bar, have considered the concept of reasonable doubt to be a vague, almost wraith-like, concept that needs to be further explained (beyond the pattern instruction). Nevertheless, the appellate cases of this State are replete with reversals of convictions because of the

attempts of those of us who have tried. Rare indeed is the veteran embellishing trial judge who has not been reversed by reason of the embellishment.

None of our many trial court embellishments, if objectively analyzed, better explain the concept than the pattern instruction whose stark simplicity was created by the bench and the bar in order to avoid the problems of embellishment. While we cannot go further than the Court of Appeals decision in *Wills*, we note for the benefit of the trial courts that it is our view that the risk of reversal arises when an instruction departs from the pattern instruction and the risk of reversal increases with the degree of departure from that pattern instruction. As we have heretofore stated, the instruction in this case was plain and prejudicial error. We shall reverse.

In light of our decision in respect to the first issue, we need not address issues 2 and 3.

JUDGMENT REVERSED; CASE REMANDED FOR A NEW TRIAL; COSTS TO BE PAID BY MAYOR & CITY COUNCIL OF BALTIMORE.