697 A.2d 432

John J. MERZBACHER

v.

STATE of Maryland.

No. 99, Sept. Term 1996.

Court of Appeals of Maryland.

July 28, 1997.

394

Michael R. Braudes, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Annabelle L. Lisic, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

KARWACKI, Judge.

In *Wills v. State*, 329 Md. 370, 620 A.2d 295 (1993), this Court exhaustively reviewed the history and constitutional

imperative of the reasonable doubt instruction. We issued a writ of certiorari in this case to consider the adequacy of the instruction given on that subject, as well as the propriety of several evidentiary rulings made by the trial judge. Finding no error, we shall affirm.

## I.

John Joseph Merzbacher and Elizabeth Murphy first encountered each other in 1972 when Merzbacher was a teacher at the Catholic Community Middle School of Baltimore ("CCMS"). Murphy, who was eleven years of age at the time, was his student. According to Murphy, Merzbacher subjected her to three years of sexual, physical, and emotional violence.[1] The torment ended when Murphy left CCMS in 1975. She did not reveal the substance of these attacks to anyone for some time. In 1979, she informed Sister Eilene Weisman of Merzbacher's behavior, but to no avail. She did so again in 1988, again without result.[2] That same year, Murphy sought advice from Father William Mannion, a former classmate of hers at CCMS. Mannion agreed to speak with Murphy at length about her experiences with Merzbacher. After doing so, Mannion reported the incidents to officials of the Archdiocese of Baltimore.

Merzbacher was eventually charged with three counts of carnal knowledge of a female child under the age of fourteen years, and single counts of perverted practice, common law rape, and sexual child abuse. From May 22 through June 8, 1995, he was tried before a jury in the Circuit Court for Baltimore City. Elizabeth Murphy was the principal State's witness against Merzbacher at that trial. The jury returned guilty verdicts on all counts, and the court sentenced Merz-

---

1. Because Merzbacher raises no issue regarding the sufficiency of the evidence, we see no need to describe in detail the horrific testimony adduced at trial.

2. Accordingly to Murphy, Weisman served as the principal of CCMS during her last two years at that school. By 1988, she was the principal of another area Catholic school.

bacher to four life sentences, plus ten years, to run concurrently. Merzbacher timely appealed those judgments to the Court of Special Appeals. The intermediate appellate court affirmed in an unreported opinion. We will mention additional facts as necessary to our consideration of Merzbacher's contentions.

## II.

In his Petition for Certiorari, Merzbacher complains that the trial court (1) provided the jury with an erroneous reasonable doubt instruction; (2) improperly admitted criminal propensity or "bad acts" evidence against him; and (3) wrongfully excluded relevant evidence favorable to the defense. We shall consider each of these assertions in turn.

### a.

Merzbacher first alleges that the trial court "propounded a completely deficient instruction defining the concept of proof beyond a reasonable doubt." Following the close of all evidence, the trial court instructed the jury as follows upon reasonable doubt:

> "as you ... know [ladies and gentlemen of the jury] under our law the Defendant is presumed to be innocent of all of the charges against him. This presumption remains with the Defendant throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the Defendant is guilty. The state, as you know, has the burden of proving the guilt of the Defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The Defendant is not required to prove his innocence, however, the State is not [ ] required to prove guilt beyond all possible doubt or to a mathematical certainty nor is the State required to negate every conceivable circumstance of innocence. Proof beyond a reasonable doubt, ladies and gentlemen, is proof that leaves you firmly convinced of the Defendant's guilt. There are very few things in this world that we know with absolute certainty

and in criminal cases the law does not require proof that overcomes every possible doubt.

If based on your consideration of the evidence you are firmly convinced that the Defendant is guilty of the crimes charged you must find him guilty. If on the other hand you think there is a real possibility that he is not guilty you must give him the benefit of the doubt and find him not guilty."

Merzbacher excepted. In his view, this instruction, (1) set the State's burden too low; (2) failed to define or explain the State's burden in any comprehensible way; or (3) otherwise rendered the harboring of a reasonable doubt more difficult than that for which the law actually calls. The State, of course, responds by asserting that the trial court's reasonable doubt instruction fell within acceptable limits and in no way prejudiced the accused.

■ The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees that a criminal defendant's conviction can be had only upon proof beyond a reasonable doubt. *Wills v. State,* 329 Md. 370, 374, 620 A.2d 295, 297 (1993)(citing *In re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1071–73, 25 L.Ed.2d 368, 373–75 (1970)); *Lambert v. State,* 193 Md. 551, 558, 69 A.2d 461, 464 (1949). The reasonable doubt standard is such an indispensable and necessary part of any criminal proceeding that, with respect to a case tried before a jury, the trial court's failure to inform the jury of that standard constitutes reversible · error. *Wills, supra,* 329 Md. at 376, 620 A.2d at 298; *Montgomery v. State,* 292 Md. 84, 93, 437 A.2d 654, 658 (1981) *(citing Jackson v. Virginia,* 443 U.S. 307, 320 n. 14, 99 S.Ct. 2781, 2790 n. 14, 61 L.Ed.2d 560, 574 n. 14 (1979)).

The issue in this case, of course, is not whether the trial court must provide the jury with a reasonable doubt instruction. It must. We here are asked the narrow question of whether the reasonable doubt instruction in the instant case · understated the State's burden of proof to the prejudice of Merzbacher. We believe that it did not.

Both the State and Merzbacher find support for their respective positions in *Wills v. State*, 329 Md. 370, 620 A.2d 295 (1993), and in *Joyner–Pitts v. State*, 101 Md.App. 429, 647 A.2d 116 (1994). Merzbacher's reliance, however, is misplaced.

In *Wills, supra,* this Court endorsed the reasonable doubt instruction agreed upon by various members of the bench and bar comprising the Committee which adopted the Maryland Pattern Jury Instructions–Criminal Law (1991) (MPJI–CR). MPJI–CR 2:02 provides that

"[a] reasonable doubt is a doubt founded upon reason. It is not a fanciful doubt, a whimsical doubt or a capricious doubt. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief *without reservation* in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty."[3] (Emphasis added).

In contrast to MPJI–CR 2:02, however, the trial judge in the case *sub judice* neither employed the "without reservation" language highlighted above, nor did he relate that concept to the jurors' decision to act "in an important matter in [their] own business or personal affairs." In Merzbacher's view, "these ideas provide real assistance to lay jurors in coming to grips with the required degree of certainty in finding a fellow-citizen guilty of a crime[.]" Without them, he argues, the trial court's instruction was hopelessly deficient.

■ While we agree that MPJI–CR 2:02 provides an adequate, if not preferable, explanation of the reasonable doubt standard, we in no way intimated in *Wills* that 2:02 is the definitive statement of the concept; to the contrary. We

---

**3.** Merzbacher's "Requested Instruction # 17" was a verbatim recitation of Maryland Pattern Jury Instruction—Criminal 1991 2:02. In response to Merzbacher's request, the court said "[n]umber 17 I will grant in my own language."

noted that "[o]ur opinions [prior to *Wills* ] have refrained from adopting a boiler plate explanation of [the term] reasonable doubt[.]" 329 Md. at 382, 620 A.2d at 301; *see also Poole v. State,* 295 Md. 167, 186, 453 A.2d 1218, 1228 (1983); *Montgomery, supra,* 292 Md. at 95, 437 A.2d at 659–60. Merzbacher's contentions notwithstanding, the law does not enshrine any particular form of the reasonable doubt instruction. We recently said as much, albeit in *dicta,* in *Hunt v. State,* 345 Md. 122, 151–52, 691 A.2d 1255, 1269 (1997)(no magic words must be included in reasonable doubt instruction for it to pass muster). The United States Supreme Court expressed the same sentiment in *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) by stating that "so long as the [trial] court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, . . . the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." 511 U.S. at 5, 114 S.Ct. at 1243, 127 L.Ed.2d at 590.

For our part, we have stressed that

"when an explanation is given to the jury, whether at the instance of the judge or at the request of a party, it must be such as does not tend to confuse, mislead, or prejudice the accused. It is better that the explanation begin with a statement of the principle of presumption of innocence which places the burden of proof on the State, where it remains throughout the trial. The State is not required to prove guilt beyond all possible doubt or to a mathematical certainty, but it is not enough if the evidence shows that the defendant is *probably* guilty. Nor is it sufficient that reasonable doubt is defined only by its own terms. The explanation should focus on the term 'reasonable doubt,' so as to bring home to the jury clearly that the corpus delicti of the crime and the criminal agency of the accused must be proved *beyond* a reasonable doubt."

*Wills,* 329 Md. at 382–83, 620 A.2d at 301 (original emphasis).

Merzbacher finds fault with the trial court's statement to the jury that proof beyond a reasonable doubt is synonymous

with "proof that leaves [the members of the jury] *firmly convinced* of the Defendant's guilt." He likewise assails the court's suggestion to the jury that they must acquit if they believe there is a "real possibility that [Merzbacher] is not guilty." This latter statement, Merzbacher argues, undermines the State's burden by placing upon the defense the obligation to prove a "real possibility" of innocence.

■ In considering his claim of error, we must consider the trial court's

"explanation of reasonable doubt as a whole; [we cannot] determine the propriety of an explanation from an isolated statement[, but must] view[ ] the effect of a suspect statement on the jury in light of the entire explanation."

329 Md. at 384, 620 A.2d at 302; *see also Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150, 167 (1954) (instruction taken as a whole must adequately convey concept of reasonable doubt to the jury); *Bowers v. State,* 298 Md. 115, 159, 468 A.2d 101, 124 (1983) (objection to court's instruction should focus on instruction as a whole, not a portion lifted out of context).

■ In that regard, we note that the trial court began its charge to the Merzbacher jury with the presumption of innocence principle, and reiterated it not once, but twice more during the charge. Moreover, the court reminded the jury on three occasions that the State was required to prove Merzbacher's guilt beyond a reasonable doubt, a burden, the court noted, which "remain[ed] on the State throughout the trial." While the remarks of which Merzbacher complains are susceptible of varying interpretations viewed in isolation, we are satisfied that the trial court's reasonable doubt instruction, taken as a whole, adequately conveyed the concept of reasonable doubt to the jury and impressed upon them the heavy burden borne by the State.

To be sure, the reasonable doubt instruction assailed in the case *sub judice* is a far cry from the rambling and incomprehensible instruction that we condemned in *Wills.* There, the trial court instructed the jury that " 'if you weigh all of the

factors, if you weigh the things that say, I shouldn't do it, and you decide to go forward, then you don't have a reasonable doubt.' " 329 Md. at 387, 620 A.2d at 303. We concluded that this explanation of reasonable doubt was both "confusing and misleading because it lean[ed] towards the preponderance standard rather than the reasonable doubt standard." *Id.*, at 387, 620 A.2d at 303. We further observed that such an instruction could lead a jury to believe that "if the evidence adduced by the State has more convincing force and produces in the minds of the jury a belief that it is more likely true than not, the reasonable doubt standard has been met." *Id.*, at 387, 620 A.2d at 303.

The *Wills* instruction suffered from the additional infirmity that it equated "reasonable doubt" with a "nagging" doubt. We thus concluded that the trial court's "instruction as a whole did not measure up to an acceptable explanation of the reasonable doubt standard." 329 Md. at 388, 620 A.2d at 303.

The Court of Special Appeals likewise condemned a trial court's reasonable doubt instruction in both *Joyner–Pitts, supra,* and *Himple v. State,* 101 Md.App. 579, 647 A.2d 1240 (1994). In attempting to define reasonable doubt for the jury, the *Joyner–Pitts* trial court, in what the Court of Special Appeals called a "rather lengthy, home spun instruction," launched into a meandering soliloquy that occupied twenty one paragraphs of the official and unofficial reporters. *See Joyner–Pitts,* 101 Md.App. at 436–441, 647 A.2d at 119–21. At times, the court compared the reasonable doubt standard to the decision to purchase consumer goods, and then at others, to the decision to marry. Observing that "[m]any human beings buy consumer goods on impulse ... [and] ofttimes even get married on impulse ... [and] also decline to do so based on no more articulable feelings than they could explain for acting to the contrary," *Id.* at 445, 647 A.2d at 124, the intermediate appellate court concluded that the instruction, taken as a whole,

"blurred the concept of reasonable doubt to the extent that there is a reasonable likelihood that the jury applied the instruction in such a way as to require either a higher

degree of doubt than is required for acquittal or a lower degree of proof for a finding of guilt than is required under the reasonable doubt standard."

101 Md.App. at 447, 647 A.2d at 125.

In *Himple, supra,* the Court of Special Appeals went so far as to reverse a defendant's conviction for "plain error" under Maryland Rule 4–325(e).[4] Although the defense failed to object at trial, the court observed that the instruction provided to the jury defined reasonable doubt as "a certainty based upon a convincing ground of probability." 101 Md.App. at 581, 647 A.2d at 1241. Considering that the subject instruction failed to incorporate the "without reservation language" sanctioned in *Wills,* and otherwise "conflict[ed] with any reasonable doubt instruction," the intermediate appellate court reversed, concluding that the instruction "was plain and prejudicial error."

The common thread running through these cases is the notion that the trial court properly informed the jury of the evidentiary standard that the State must meet—beyond a reasonable doubt—and then proceeded to explain that standard in terms which suggested that they could convict upon a quantum of proof lower than that legally required. For these trial courts, what started as a laudable attempt to further explain a legal abstraction ended in reversible error. The case *sub judice* simply does not fit that mold. While the instruction provided by the trial court below was perhaps slightly anemic, we cannot conclude that, in its entirety, it understated the State's burden of proof, or otherwise prejudiced Merzbacher in any way.

---

**4.** Maryland Rule 4–325(e) provides:

"Objection.—No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object."

█ Nonetheless, we strongly recommend that trial courts closely adhere to the reasonable doubt instruction endorsed by *Wills* and articulated in MPJR–CR 2:02. Human experience has shown that language is, at best, an imperfect form of communication. Reasonable doubt is a vague and difficult concept that must be utilized by jurors in the demanding intellectual process of interpreting evidence presented to them in the course of a criminal proceeding. The concept evades formalistic precision and does not lend itself to quantification by the mechanical laws of the physical world. To suggest that reasonable doubt is best defined by a particular set of words strung in a specific order pretends a mathematical rectitude which, even in the best of circumstances, does not exist in the deliberative process. In defining reasonable doubt for jurors, a trial court must use its best legal judgment and explain the term in light of the principles we articulated in *Wills, See* 329 Md. at 382–83, 620 A.2d at 301, and avoid explanations and examples which undermine the State's burden proof and the defendant's presumption of innocence. A trial court can do, and a criminal defendant is entitled to, no more.

**b.**

Merzbacher next contends that the trial court erroneously permitted the State to introduce "prior bad acts" and "prior crimes" evidence over his objections. In his view, "[n]one of these matters bore any significant probative value."

█ At the outset, we note that the admission of evidence is committed to the considerable and sound discretion of the trial court. *North River Ins. Co. v. Mayor and City Council of Baltimore,* 343 Md. 34, 89–90, 680 A.2d 480, 508 (1996); *Armstead v. State,* 342 Md. 38, 66, 673 A.2d 221, 235 (1996); *Lubinski v. State,* 180 Md. 1, 8, 22 A.2d 455, 459 (1941). In that regard, all relevant evidence is generally admissible. A corollary to that rule is that irrelevant evidence is not admissible. Md. Rule 5–402. To be relevant, evidence must tend to establish or refute a fact at issue in the case. Md. Rule 5–401; *see also Williams v. State,* 342 Md. 724, 736, 679 A.2d 1106, 1112 (1996). Once a finding of relevancy has been made, we

are generally loath to reverse a trial court unless the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion. *White v. State,* 324 Md. 626, 637, 598 A.2d 187, 192 (1991); *Thomas v. State,* 301 Md. 294, 317, 483 A.2d 6, 18 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985).

 Nonetheless, as we said in *Williams, supra,*
"[a] finding by the trial judge that a particular piece of evidence is relevant, however, does not mean that evidence is *automatically* admissible. Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Hunt v. State,* 321 Md. 387, 425, 583 A.2d 218, 236 (1990), *cert. denied,* 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991); 5 LYNN MCLAIN, MARYLAND EVIDENCE § 403.1, at 297 (1987). As with the trial court's relevancy determination, a decision to admit relevant evidence over an objection that the evidence is unfairly prejudicial will not be reversed absent an abuse of discretion. *Hunt,* 321 Md. at 425, 583 A.2d at 236."
342 Md. at 737, 679 A.2d at 1113 (emphasis added).

Although not challenging its relevancy, Merzbacher penultimately claims that testimony by one Sergeant Michael Snow of the Baltimore City Police Department unfairly prejudiced his case by describing criminal acts for which Merzbacher was not on trial. In an exchange with the prosecutor, Snow testified as follows:

Q Sergeant, if you know, did the defendant smoke back then?

A Yes, he did.

Q What did he smoke?

A He smoked a pipe.

Q Did you ever see him smoke the pipe?

A Yes, I did.

Q Where would he smoke it?

A He would smoke it in class, in the hallway.

Q Were there ever comments by the Defendant regarding the pipe?

A Yes, there were.

Q Such as?

[DEFENSE COUNSEL]: Objection:

[THE COURT]: Overruled.

A He would talk about how he liked to place the pipe inside of various girls including Ms. Murphy.

Q And, if you can remember the specifics of the conversation?

A He said he liked to taste the pipe after he put the pipe inside the girls.

Merzbacher likewise complains that the trial court erroneously admitted similar testimony indicating that Merzbacher regularly drank with, and purchased alcohol for, his students, used offensive and vile language in class towards other students and members of the CCMS faculty, and physically abused, sometimes in a sexual manner, other students in his class.[5] He correctly asserts that "other crimes" or "wrongful acts" evidence is presumptively inadmissible. Indeed, Maryland Rule 5-404(b) provides that

"[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith...."

Maryland Rule 5-404(b) embodies the common law rule of "other crimes evidence." In fact, in *Ayers v. State,* 335 Md. 602, 645 A.2d 22 (1994), we reaffirmed the general principle that "evidence of a defendant's prior criminal acts may not be introduced to prove guilt of the offense for which the defendant is on trial." 335 Md. at 630, 645 A.2d at 35. The rationale for the rule, we noted, was to prevent a jury from punishing a defendant for having a "criminal propensity" or from otherwise concluding that evidence of prior criminal

---

5. According to Father William Mannion, Merzbacher would "call students derogatory names ... pinch the boys buttocks ... pull the bra straps of the girls ... and many things ... like that."

conduct supports the veracity of the charges for which the defendant is on trial. *Id.*, 335 Md. at 628–30, 645 A.2d at 35 (quoting *Straughn v. State,* 297 Md. 329, 333, 465 A.2d 1166, 1168–69 (1983)); *see also Terry v. State,* 332 Md. 329, 334, 631 A.2d 424, 426 (1993); *State v. Faulkner,* 314 Md. 630, 633, 552 A.2d 896, 897 (1989); *Ross v. State,* 276 Md. 664, 669, 350 A.2d 680, 684 (1976). Stated otherwise, the exclusion of other crimes evidence is ordinarily compelled because it is often too prejudicial and may interfere with a defendant's Sixth Amendment right to a fair trial. *See Ayers, supra,* 335 Md. at 631 n. 8, 645 A.2d at 36 n. 8; *Harris v. State,* 324 Md. 490, 495–500, 597 A.2d 956, 959–62 (1991). *See also* Lynn McLain, *Maryland Practice: Maryland Evidence,* § 404.5 (1987); Joseph F. Murphy, Jr., *Maryland Evidence Handbook,* § 510, at 287 (2d ed.1993).

■■■ Maryland Rule 5–404(b), however, incorporates well recognized exceptions to the general prohibition of other crimes evidence. Consistent with prior holdings of this Court, the Rule goes on to provide that such evidence may be admissible

> *"for other purposes, such as* proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident."

(emphasis added); *see also, Ayers, supra,* 335 Md. at 631, 645 A.2d at 36; *Harris, supra,* 324 Md. at 500, 597 A.2d at 961; *Faulkner, supra,* 314 Md. at 634, 552 A.2d at 898. But as we observed in *Harris v. State,* 324 Md. 490, 597 A.2d 956 (1991):

> "This is a representative list of examples in which evidence has been found to meet the exception to the general rule of exclusion; it is not a laundry list of finite exceptions."

324 Md. at 501, 597 A.2d at 962. At base, "[e]vidence of other crimes may be admitted ... if it is substantially relevant to some contested issue in the case and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal." *Faulkner,* 314 Md. at 634, 552 A.2d at 897–98; *see also Ross, supra,* 276 Md. at 669, 350 A.2d at 684.

Beginning with the pretrial process, Merzbacher sought to exclude any and all testimony concerning acts which did not directly relate to his alleged physical and sexual assaults upon Murphy. Specifically, Merzbacher wanted no mention of his alleged assaults upon other members of Murphy's class, or of any other collateral behavior. In his view, all of this testimony constituted inadmissible "other crimes evidence."[6] We, like the trial court, see it differently.

In summarizing the State's position in opposition to Merzbacher's motion in limine to exclude certain other crimes evidence, the trial judge observed that

"your [the State's] response ... is essentially two[-]pronged, one, that these acts taken cumulatively during the pertinent time periods we're speaking of created a climate of intimidation, a fear that made her vulnerable to the commission of the acts and maybe vulnerable to consenting to certain acts where under more normal circumstances she would not have consented considering that she was eleven years old at the time and the second prong, if I understand your argument correctly, is that it also helps explain away the arguments of the Defense. It goes to credibility, that one of the major thrusts ... of the Defense in this case will be why did you wait so long[?] I mean, what kind of credibility do you have when you've waited twenty years, twenty-two years, twenty-five years, whatever it will be, to say anything and that you feel that this is not the explanation, an explanation at least in part as to why for such a period of time at the tender age she was ... frightened."

After confirming its account of the State's position, the court "allowe[ed] this type of evidence to come in as it relate[d] not necessarily to a specific charge but [because] it relate[d] to the victim in this case during the timeframe work of the

---

6. Although Merzbacher interposed no objection, Sergeant Michael Snow testified that Merzbacher once threatened Murphy with a handgun that he kept in his desk, and that on one occasion, Merzbacher discharged the weapon in class over the heads of his students.

specific charges.... Things that were done to [Murphy] or others in her presence that reasonably could be concluded to have an impact on her [sic]."

■■■ We cannot fault the trial court's analysis, or otherwise conclude that the court abused its discretion by permitting introduction of evidence of criminal acts for which Merzbacher was not on trial. Given the unique circumstances of this case, we are convinced that the evidence about which Merzbacher complains fits neatly within the exceptions to the exclusionary provisions of Maryland Rule 5–404(b) and was admissible under previous decisions by this Court.

Merzbacher defended himself by attacking the credibility of Murphy, pointing to the over two decades it took for her to come to the authorities. By doing so, he forced the State into showing the jury that Murphy's rape took place in a larger, more invidious context. Murphy testified, corroborated by other witnesses, that Merzbacher used a combination of frivolity and fright to run his classroom. *See* n. 6, *supra.* In part, this served to explain and was particularly relevant to why Murphy, either reasonably or unreasonably, waited so long to reveal her story to the State's Attorney's Office.

The United States Court of Appeals for the Fourth Circuit faced a similar set of facts in *U.S. v. Powers,* 59 F.3d 1460 (4th Cir.1995). There, a father was charged with sexually abusing his nine-year-old daughter. The trial court permitted the government to introduce evidence showing that the defendant regularly abused his other children, his wife, and on at least one occasion, threatened to burn the family home with them inside. In concluding that such evidence "was admissible [under Federal Rule of Evidence 404(b) ][7] to explain [the victim's] submission to the acts and her delay in reporting the sexual abuse," 59 F.3d at 1466, the court observed that:

> "we have made it clear that prior bad acts evidence is considered 'necessary and admissible [either] where it is an essential part of the crimes on trial, *see United States v.*

---

7. Md. Rule 5–404(b) derives from Federal Rule of Evidence 404(b).

*Masters,* 622 F.2d 83, 86 (4th Cir.1980), or where it 'furnishes part of the context of the crime. *United States v. Smith,* 446 F.2d 200, 204 (4th Cir.1971).' [*United States v.*] *Rawle,* 845 F.2d [1244, 1247 n. 4] (4th Cir.1988). Here, the evidence of the beatings was necessary to place the sexual abuse evidence in context.

We have approved bad acts evidence to show the context of the crime in many circumstances, often simply to complete the story of the offense. We stated in *Masters* [, *supra* ] that admission of bad acts evidence is necessary to show the context of the crime when the bad acts are 'so intimately connected with and explanatory of the crime charged against the defendant and [are] so much a part of a setting of the case and its environment that [their] proof is appropriate in order to complete the story of the crime on trial by proving the immediate context of the res gestae.' 622 F.2d at 86."

*Id.* We find the Fourth Circuit's approach compelling. Murphy's sexual abuse was not an isolated incident devoid of setting. It took place over the course of a three year period in a very specific relationship and highly intimidating atmosphere. The other crimes or bad acts evidence introduced against Merzbacher were not for conduct "wholly independent of that for which [Merzbacher was] on trial." *Ross, supra,* 276 Md. at 669, 350 A.2d at 684. The jury was entitled to know the setting in which the alleged sexual misconduct took place because, under the facts of this case, the setting and the crime were so intimately connected as to be inseparable.

Moreover, Merzbacher was charged with, *inter alia,* common law rape—the act of a man having unlawful carnal knowledge of a female over the age of ten years by force without the consent and against the will of the victim. *Hazel v. State,* 221 Md. 464, 468, 157 A.2d 922, 925 (1960). As the trial court recognized, in order to successfully prosecute Merzbacher, the State had to show, in additional to the other elements of common law rape, that Murphy did not consent to the alleged sexual intercourse with the defendant. Merzbacher suggested pretrial that he would not raise the issue of

consent, instead arguing that the rape never occurred. Regardless, the State was still under an affirmative legal obligation to prove each and every element of the offense charged beyond a reasonable doubt—including lack of consent. Thus, despite Merzbacher's attempts at early disposal, consent was an issue at trial.

 In that regard,

"lack of consent is generally established through proof of resistance or by proof that the victim failed to resist because of fear. The degree of fear necessary to obviate the need to prove resistance, and thereby establish lack of consent, was defined in the following manner:

> 'The kind of fear which would render resistance by a woman unnecessary to support a conviction of rape includes, but is not necessarily limited to, a fear of death or serious bodily harm, or a fear so extreme as to preclude resistance, or a fear which would well nigh render her mind incapable of continuing to resist, or a fear that so overpowers her that she does not dare resist.'" [*Hazel, supra,* 221 Md.] at 470, 157 A.2d [at 925.]

*State v. Rusk,* 289 Md. 230, 242–43, 424 A.2d 720, 727 (1981). Trial testimony revealed that Merzbacher's persistent and vicious conduct created a threatening environment which suggested that Murphy had little choice but to acquiesce in his advances. Such testimony was highly relevant to the consent issue, and was not "offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal." *See Faulkner, supra* 314 Md. at 634, 552 A.2d at 897–98; *see also Ross, supra,* 276 Md. at 669, 350 A.2d at 684. In short, we perceive no abuse of trial court discretion by permitting testimony concerning the atmosphere in which Merzbacher's crimes allegedly occurred.

**c.**

 The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Right guarantee a criminal defendant the right to cross-examine

adverse witnesses. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965)(Sixth Amendment made applicable to states through Fourteenth Amendment); *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *State v. Gray,* 344 Md. 417, 420, 687 A.2d 660, 662 (1997); *Ebb v. State,* 341 Md. 578, 587, 671 A.2d 974, 979. Implicit in this right is the ability to question State's witnesses upon matters likely to affect their credibility, including bias or other such motivators. Md. Rule 5–616(a)(4). Merzbacher claims that his right of cross-examination was unduly limited in several instances during his trial.

In one such instance, Merzbacher attempted to introduce into evidence civil complaints filed by Murphy against Merzbacher and the Archdiocese. Although Murphy admitted on cross-examination that she did indeed have such a pending suit, and that she was seeking significant monetary damages, Merzbacher nonetheless sought to put before the jury Murphy's original and amended complaints to (1) establish Murphy's general bias; and (2) to show that allegations of threats and use of a handgun were important in arguing that the civil action should not be barred by limitations. The trial court refused, stating that

"[f]irst, as I've already indicated, Ms. Murphy did not deny that her lawsuit was in the millions of dollars. She did not explicitly affirm it, but she did not deny it and I think that can be argued to the jury that she has not denied, ladies and gentleman, that she is filing this suit in the millions of dollars. She has not denied this, ladies and gentlemen of the jury. That can be argued to the jury very strongly.

The second reason I would not allow it is I think it could unfairly mislead the jury because we all know that she can sue for ten billion dollars too if you want to do that. There is no limit to the ad damnum clause in a civil suit and if I'm willing to admit that, to let them come in and say yes, it's in the hundred and forty million dollar range or so forth I would feel obligated to have testimony brought before the jury as to the way the ad damnum clause is handled by lawyers now in the State of Maryland, that there is no limit

to what you can sue for and that the numbers for all intents and purposes mean nothing and I think it would allow—I think it would be unfairly prejudicial for the jury to feel that this is what she is really seeking, she is really, really trying to get a hundred and forty million dollars. I think it would be definitely unfair and prejudicial."

 We have said on numerous occasions that trial courts retain wide latitude in determining what evidence is material and relevant, and to that end, may limit, in their discretion, the extent to which a witness may be cross-examined for the purpose of showing bias. *Ebb, supra,* 341 Md. at 587, 671 A.2d at 978; *Bruce v. State,* 328 Md. 594, 624, 616 A.2d 392, 407 (1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993); *Shields v. State,* 257 Md. 384, 392, 263 A.2d 565, 569 (1970). Even so, a cross-examiner must be given wide latitude in attempting to establish a witness' bias or motivation to testify falsely. *Ebb,* 341 Md. at 587, 671 A.2d at 978; *Smallwood v. State,* 320 Md. 300, 307–08, 577 A.2d 356, 359 (1990). Although we have held that trial courts may impose

" 'reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant[,]' *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683[,] [l]imitation of cross-examination should not occur, however, until after the defendant has reached his " 'constitutionally required threshold level of inquiry.' " "

*Smallwood,* 320 Md. at 307, 577 A.2d at 359. As the decision to limit cross-examination ordinarily falls within the sound discretion of the trial court, our sole function on appellate review is to determine whether the trial judge-imposed limitations upon cross-examination that inhibited the ability of the defendant to receive a fair trial. *Ebb,* 341 Md. at 588, 671 A.2d at 978. Consistent with that discretion, we note, however, that the trial judge, and not this Court, is in the best position to determine whether the introduction of certain

impeachment evidence would enmesh the trial in confusing or collateral issues. *Id.,* 341 Md. at 588–90, 671 A.2d at 979.

Merzbacher claims that introduction of Murphy's civil complaints was necessary to a full and fair exploration of her credibility. Although we agree that a pending lawsuit by a witness in a criminal prosecution against the accused may reveal a potential source of bias, we do not believe that the trial court abused its discretion by excluding Murphy's civil complaints from evidence.

Murphy conceded on cross-examination by Merzbacher's counsel that she did indeed have a pending suit against Merzbacher and the Archdiocese of Baltimore. She also conceded that she was seeking damages worth at least twenty-million dollars. In terms of bias, Merzbacher thus "reached his Constitutionally required threshold level in inquiry." *See Smallwood, supra,* 320 Md. at 307, 577 A.2d at 359. In response, Merzbacher points out that in reality, Murphy was seeking, not twenty million dollars, but one-hundred-forty million dollars in damages. In his view, this evidence would have given the jury a proper measure of Murphy's bias. As the trial court pointed out, however, figures contained in *ad damnum* clauses often mean very little. We think it sufficient and protective of Merzbacher's right of cross-examination that he was able to establish that Murphy had a significant financial stake in the outcome of the criminal proceedings. Under these circumstances, the exact dollar figure was irrelevant and would have added little to information already possessed by the jury.

Merzbacher also contends that Murphy's specific allegations of violent misconduct contained in her civil complaints were critical to her avoiding the dismissal of her lawsuit on limitations grounds. *See Murphy v. Merzbacher,* 346 Md. 525, 697 A.2d 861 (1997). In our view, however, this evidence would have been merely cumulative of the fact that Murphy had an incentive to testify in a manner supportive of her other legal endeavors. A trial judge always acts within his or her discretion by prohibiting the introduction of relevant but otherwise

cumulative evidence. Md. Rule 5–403;[8] *see also State v. Broberg,* 342 Md. 544, 575 n. 6, 677 A.2d 602, 617 n. 6 (1996). Moreover, the limitations issue was of marginal relevance to the criminal proceeding, and may have invited forays "into collateral matters [such as the meaning of limitations and the role in plays in our civil justice system] which would [have] obscure[d] the trial issues and [led] to the factfinder's confusion," *Smallwood,* 320 Md. at 308, 577 A.2d at 359 (citing *State v. Cox,* 298 Md. 173, 178, 468 A.2d 319, 321 (1983)).

▮▮▮ During cross-examination of Mannion by the defense, the following colloquy ensued:

"Q Father Mannion, you know who I am, do you not?

A Yes.

Q Okay. And, you know that myself and [another defense counsel] and our investigator tried to make time to see you, is that correct?

A Yes.

Q And, you wouldn't speak to us, isn't that correct?

[STATE]: Objection, Your Honor.

[THE COURT]: I will sustain the objection."

Merzbacher claims that Mannion would have answered the question in the negative and by doing so would have revealed a hostility towards the defense. While that may or may not be true, Mannion's hostility towards the defense is apparent from his other testimony at trial, and his answer to the above question would have revealed nothing new to the jury. Indeed, as a classmate of Murphy's who corroborated much of the testimony she provided regarding Merzbacher's classroom behavior in the early and mid–1970's, it is difficult to imagine

---

8. Rule 5–403 provides:
 "EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

that Mannion viewed Merzbacher with anything but antipathy. On the whole, we cannot conclude that the trial court abused its discretion by restricting cross-examination on this question or that the defense was prejudicially harmed.

The trial court likewise prevented Merzbacher from eliciting testimony from an Archdiocese official concerning whether or not complaints had been lodged against Merzbacher during his tenure as a teacher. Before the official answered, the State objected and the court sustained the objection. Merzbacher attempted the question again, and again the State's objection was sustained.

Ordinarily, a formal proffer of the contents and relevancy of the excluded evidence must be made in order to preserve for review the propriety of the trial court's decision to exclude the subject evidence. *Bruce v. State*, 328 Md. 594, 626–27, 616 A.2d 392, 408; *Mack v. State*, 300 Md. 583, 603, 479 A.2d 1344, 1354 (1984); *Peregoy v. Western Md. R.R. Co.*, 202 Md. 203, 209, 95 A.2d 867, 870 (1953). Merzbacher concedes that no such proffer was made, but asserts that his failure to do so should be excused because the answer he was seeking was apparent from the question. *See Mills v. State*, 310 Md. 33, 46, 527 A.2d 3, 9, *rev'd on other grounds*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). We are not so convinced. The Archdiocese official could have answered the question in any number of ways, and we are in no position as an appellate court to discern what that answer may have been, whether favorable or unfavorable to the defense. Nevertheless, even assuming that the witness would have stated that no one other than Murphy made any complaints against Merzbacher, the absence of any such complaints had no relevance to the complaints eventually lodged by Murphy.

The final contention raised by Merzbacher concerns the trial court's refusal to permit certain testimony regarding Murphy's sexual orientation and testimony suggesting that she had made false sexual misconduct allegations against another individual. The State moved *in limine* to exclude this evidence. Although the trial court concluded that Murphy's

sexual orientation had little, if any relevance, to the issues at trial and that any such relevance was "very clearly outweighed by the potential prejudice to the complaining witness," the court continued to entertain the possibility that the defense would later proffer testimony concerning false allegations made by Murphy against a nun in the Baltimore Archdiocese.

When the issue was visited at trial, the court sustained the State's objection to Merzbacher's attempt to introduce testimony from Archdiocese official Susan Sullivan concerning whether or not Murphy had reported alleged acts of misconduct or abuse involving persons other than Merzbacher. He contends this was error, because "the jury ... could have viewed the proffered testimony as evidence that ... Murphy had a proclivity for accusing people of sexual misconduct, and that these accusations were not always credible." We find that assertion curious in light of the fact that Merzbacher's own counsel believed that had Sullivan been allowed to answer the question, she would have said that Murphy "did not characterize [any such remarks] as a complaint."

Although Merzbacher believes his attempt to show Murphy's propensity to falsely accuse others of sexual misconduct is supported by our holding in *State v. Cox*, 298 Md. 173, 178, 468 A.2d 319, 321 (1983), we disagree. In *Cox*, this Court reversed a defendant's conviction of rape and related offenses because the trial court erroneously precluded his defense counsel from asking the prosecutrix about an incident where *that* witness had allegedly lied under oath. Because the testimony of the witness was pivotal to the State's case, we concluded that it was error to preclude the defense from questioning her about that specific instance of past misconduct which was highly relevant to her credibility. 298 Md. at 183, 468 A.2d at 323–24. We also noted, however, that had that witness denied the prior misconduct, the examiner would have been bound by the answer and precluded from introducing extrinsic testimony to prove the discrediting acts. *Id.*, 298 Md. at 181–85, 468 A.2d at 323–24. (*citing Smith v. State*, 273 Md. 152, 157–58, 328 A.2d 274, 277–78 (1974); *Howard v.*

*State*, 234 Md. 410, 415, 199 A.2d 611, 613 (1964)); *see also* McLain, *Maryland Practice: Maryland Evidence*, § 608.1.

In the instant case, Murphy was not questioned about whether or not she made false accusations against another person. Rather, Merzbacher attempted to impeach her credibility through the introduction of highly speculative and unproven extrinsic testimony suggestive of her tendency to make such accusations. Merzbacher failed to produce evidence of a complaint made by Murphy other than that made against Merzbacher, much less one that was false.

This is precisely the issue our predecessors explored in *Rau v. State*, 133 Md. 613, 105 A. 867 (1919). Rau, charged with having carnal knowledge of a women child under the age of fourteen years, asked the following question of the child's father at trial:

"I want to ask you, Mr. Lohmeyer [the victim's father], if your daughter Martha, the prosecutrix in this case, didn't tell you that a man by the name of Hutton, a neighbor across the road where you lived about a year ago, that about that time, that this Mr. Hutton had sexual intercourse with her, and if she didn't thereafter tell you that it was not so and that she had told a lie on Hutton . . . ?"

133 Md. at 616, 105 A. at 868. The State's objection to the question was sustained. In response, Rau asserted that "the question was proper because [it] . . . would have [had] a tendency to impeach her character," *Id.* at 617, 105 A. at 868— an assertion, we note, identical to Merzbacher's.

In rejecting Rau's argument, the Court noted that

"the prosecuting witness was not asked on cross-examination whether she had told a lie concerning the alleged intercourse with Hutton, . . . but whether or not she had told her mother a year ago that a man by the name of Horton, a neighbor of hers, had sexual intercourse with her."

The Court thus concluded that because "it is almost universally held that proof of particular facts is inadmissible in impeaching a witness . . . there was no error in the [trial] [c]ourt

in refusing to permit the question to be asked and answered." *Id.* at 617–18, 105 A. at 868.

 We noted in *Cox* that although Rau would have been well within his rights to ask the prosecutrix questions concerning her credibility on cross-examination,[9] he was not permitted "to broach the subject through extrinsic testimony." 298 Md. at 183, 468 A.2d at 323. Nothing has changed since *Rau.* Indeed, Maryland Rule 5–608(b) codifies the rule applied in *Cox* and *Rau:*

> **Impeachment by Examination Regarding Witness's Own Prior Conduct Not Resulting in Convictions.**—The court may permit any witness to be examined regarding the witness's own prior conduct that did not result in a conviction but that the court finds probative of a character trait of untruthfulness. Upon objection, however, the court may permit the inquiry only if the questioner, outside the hearing of the jury, establishes a reasonable factual basis for asserting that the conduct of the witness occurred. *The conduct may not be proved by extrinsic evidence.* (Emphasis added).

Assuming that he had a reasonable basis to do so, *see* n. 9, *supra,* Merzbacher could have questioned Murphy about prior instances of her falsely accusing another individual of sexual misconduct. Although we agree that any such false accusation would have had a significant bearing on Murphy's credibility, Merzbacher was not entitled to introduce extrinsic testimony to support his attempted exploration of Murphy's character through prior bad acts evidence. The trial court did not err

---

9. We also recognized in *Cox,* however, that the right to question a witness about prior bad acts not resulting in conviction is subject to the caveat that

> "the trial judge is satisfied that there is a reasonable basis for the questions, that the primary purpose of the inquiry is not to harass or embarrass the witness, and that there is little likelihood of obscuring the issue on trial."

*State v. Cox,* 298 Md. 173, 179, 468 A.2d 319, 322 (1983).

**420**

or otherwise abuse its discretion by excluding this line of questioning.

*Judgments Affirmed, with Costs.*

BELL, C.J., and ELDRIDGE, J., concur in result only.