9 A.3d 155

Herbert COPELAND

v.

STATE of Maryland.

No. 940, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Dec. 2, 2010.

310

Martha Gillespie (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: EYLER, JAMES R., ZARNOCH, PAUL E. ALPERT (Retired, specially assigned), JJ.

EYLER, JAMES R., J.

Herbert Copeland, appellant, was charged in the Circuit Court for Prince George's County with kidnapping, second degree assault, false imprisonment, and carrying a dangerous weapon. After a jury trial, appellant was convicted of second degree assault and acquitted of all other charges. The court sentenced appellant to a ten-year prison term with all but three years suspended, and an additional five years supervised probation to commence upon his release.

On appeal, appellant contends that the trial court erred in allowing the State to present evidence of threats made by the appellant against the victim and her family to deter the victim from testifying on behalf of the State. Finding no reversible error, we shall affirm.

## Facts and Proceedings

On September 13, 2008, Ms. Nesmith was driving her boyfriend, appellant, to her friend's house. According to Ms. Nesmith, appellant had forced her to drive him there because he suspected her of having a relationship with this friend. When Ms. Nesmith expressed that she did not want to go,

appellant pulled a steak knife out of the glove compartment and told her "you better take me over there, because you [know] what I'll do."

Ms. Nesmith drove erratically, and nearly struck an oncoming vehicle. The driver of the oncoming vehicle, Robert Conley, noticed that Ms. Nesmith was yelling for help as she drove. Mr. Conley observed Ms. Nesmith's vehicle stop in the middle of the road, and saw the couple tussling in it. According to Mr. Conley, Ms. Nesmith fell out of the vehicle, and appellant grabbed her and forced her back in. Appellant then drove, and Ms. Nesmith moved to the passenger side. According to Ms. Nesmith, appellant kept her in a choke hold as he drove, and said "you know what I'm going to do to you now."

Mr. Conley called 911. Officer Christopher Browning, who had received an alert for the vehicle, recognized and followed the vehicle as appellant drove. Officer Browning noticed that appellant had his arm around Ms. Nesmith's neck and was pulling her towards him. When the vehicle stopped at an intersection, Officer Browning arrested appellant.

The case was tried on April 1 and 2, 2009. At trial, the State asked Ms. Nesmith whether appellant had confronted her about testifying. In pertinent part, Ms. Nesmith testified:

[Prosecutor] Let me repeat that. Specifically, on February 3rd of [2009], did something happen in that regard? Did you have a conversation with [appellant] about your participation in his prosecution today?

[Witness] Yes.

[Prosecutor] Tell me about that.

[Witness] He had came to my house and h—I was sitting in my bed. He came in my bedroom, threw some court papers on my bed and said, this is not going to happen, I'm not going to go to jail for this and I told you what I was going to do if I was to go to jail.

[Prosecutor] You said he said he told you what he was going to do. What did he specifically say he was going to do?

[Witness] He said he was going to kill me and my family, and he said if he was to get locked up while he's in jail he's going to, he's going to be sleeping, and he's going to be thinking about what he's going to do to me, and when he gets out I best watch.

[Prosecutor] Is that the last conversation you had with [appellant] before this case today.

[Witness] No.

[Prosecutor] When is the last time you had a conversation with [appellant] about this, you coming to court today, telling us what happened?

[Witness] I think it was like Sunday.

[Prosecutor] Can you tell us what happened last Sunday?

[Witness] Like four days ago.

[Prosecutor] Last Sunday?

[Witness] Yeah. He asked was I going to court, and I told him no.

[Prosecutor] You told him you weren't coming to court?

[Witness] Yes.

[Prosecutor] And what did he say when you said you weren't coming to court.

[Witness] He said, that's all I need to know.

[Prosecutor] Since that time, did you tell him that you were coming to court or is this a surprise?

[Witness] Yeah, he said I didn't tell him.

Officer Browning also took the stand. In pertinent part, he testified as follows.

[Prosecutor] Mr. Browning, Officer Browning, as I was saying, when you first started talking to Ms. Nesmith initially, what was her reaction to cooperating with your investigation of what happened initially?

[Witness] She was very hesitant toward cooperating. Another officer was speaking to her while I was placing the defendant under custody.

[Prosecutor] I want to talk about her conversation with you, you said, four minutes later?

[Witness] Right.

[Prosecutor] You said she was hesitant. Why do you say she was hesitant? Did she tell you why?

[Witness] She told me that she, you know, after I had talked to her and, you know, tell her I was here to help her and the only way I could help her was to find out what was going on, you know, for my investigation. That's when she told me she was afraid.

[Prosecutor] What specifically did she say?

[Witness] She was—told me she was afraid that the defendant was going to hurt—... was going to hurt her family.... She said she was fearful for her family and for herself that the defendant was—would come back and in retaliation if she spoke to me.

[Prosecutor] And after she had this conversation with you, were you able to convince her to tell you what happened that day?

[Witness] Yes, I was.

After the jury found appellant guilty of second degree assault, the circuit court sentenced appellant. This appeal followed.

### Discussion

On appeal, appellant contends that the trial court erred in admitting evidence of appellant's threats to Ms. Nesmith and her family. Appellant objected in circuit court, and on appeal, he asserts the same grounds. First, he claims that Officer Browning's testimony was hearsay outside of any recognized exception to the hearsay rule. Next, he argues that both Officer Browning's testimony and Ms. Nesmith's testimony constituted inadmissible "other crimes" evidence and caused unfair prejudice to appellant. We reject each argument in turn.

## A. *Hearsay*

■ Appellant argues in passing that Officer Browning's testimony concerning Ms. Nesmith's expression of fear that appellant would hurt her or her family constituted inadmissible hearsay. Appellant further contends that the testimony does not fit into any hearsay exception listed in Maryland Rule 5–803. We disagree.

Officer Browning's testimony was admissible hearsay under Rule 5–803(b)(3), which sets forth a hearsay exception for "Then Existing Mental, Emotional, or Physical Condition." The exception allows into evidence:

> [Statements] of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or the declarant's future action. . . .

Appellant does not challenge the relevancy of the testimony, but we note that Ms. Nesmith's hesitancy and the reason for the hesitancy, i.e., fear, were relevant because, if believed, the evidence was tied to other evidence of threats by appellant. Threats are admissible because they demonstrate consciousness of guilt. See discussion, *infra, part B.*

■ Generally, appellate decisions have addressed Rule 5–803(b)(3) in the context of whether a hearsay statement was admissible to prove intent. *Edery v. Edery,* 193 Md.App. 215, 234, 996 A.2d 961 (2010). Nevertheless, the exception is not limited to an expression of intent to engage in future conduct. Here, the testimony was admissible to prove the witness's then existing state of mind, *i.e.,* fear, to prove the truth of the stated reason for the fear, *i.e.,* a threat by appellant. The testimony was thus properly admitted.

## B. *Admission of Other Crimes and Bad Acts*

■ Appellant argues that both Officer Browning's testimony concerning Ms. Nesmith's fears and Ms. Nesmith's testimo-

ny concerning appellant's threats constituted unduly prejudicial "other crimes" evidence. We disagree.

The standard by which we must address this issue is narrow. The admission of "other crimes" evidence is vested within the sound discretion of the trial court and we will not overrule the decision of the trial court unless there has been an abuse of discretion. *Merzbacher v. State*, 346 Md. 391, 404, 697 A.2d 432 (1997). Likewise, we may not overturn a trial court's admission of evidence over objection that the evidence is unduly prejudicial unless the admission constituted an abuse of discretion. *Hunt v. State*, 321 Md. 387, 425, 583 A.2d 218 (1990).

While, generally, evidence of a defendant's prior bad acts is inadmissible, Maryland Rule 5–404(b) recognizes situations in which evidence of prior criminal or wrongful acts may be admitted. Rule 5–404(b) sets forth a non-exhaustive list of special circumstances. *Streater v. State*, 352 Md. 800, 809, 724 A.2d 111 (1999). Rule 5–404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

In Maryland, "consciousness of guilt is an 'other purpose' that will overcome the presumption of exclusion that is attached to 'other crimes' evidence." *Conyers v. State*, 345 Md. 525, 554, 693 A.2d 781 (1997) (evidence that defendant murdered a witness admissible as consciousness of guilt in trial of murder charges); *see also Jackson v. State*, 132 Md.App. 467, 483–87, 752 A.2d 1227 (2000) (admitting as evidence of "consciousness of guilt," testimony that prior to raping the victim, the defendant told her "he had been arrested before" and that after the rape, he asked her "have you figured out what I have been arrested for?"); *State v. Edison*, 318 Md. 541, 547–49, 569 A.2d 657 (1990) (evidence of flight is admissible to show consciousness of guilt).

The evidence in this case shows that appellant attempted to intimidate Ms. Nesmith from aiding in his prosecution by threatening to kill her and her family. Such witness intimidation shows that appellant was conscious of his guilt with respect to the assault on September 13. Admission of the threats was thus permissible under Rule 5–404(b) and did not constitute an abuse of discretion.

Appellant's claim that admission of the threats was more prejudicial than probative is equally without merit. In appellant's view, evidence of the threats carried great weight with the jurors in deciding whether appellant had intimidated her on the day of the charged offense. Appellant argues that this prejudice outweighed any probative value because evidence of the threats was unnecessary—Ms. Nesmith agreed to testify, and ended up testifying in a manner expected. Her statements were not exculpatory to appellant or internally inconsistent. In other words, appellant argues, Ms. Nesmith's testimony did not indicate that she had been influenced by the threats.

The circuit court determined that evidence of attempts to influence a witness "would be somewhat prejudicial," but "certainly more appropriate than prejudicial as to the behavior." The circuit court balanced the probative and prejudicial value of the evidence, and again, its decision to admit the evidence was not an abuse of discretion.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**